W. G. SMITH v. JOHN L. ROPER LUMBER COMPANY.

(Filed 11 March, 1908).

**Privileged Communications—Evidence—Statements to Physician— Competency.**

> At common law, communications between patients and their attending physicians were not regarded privileged.   In an action to recover damages for physical injury alleged to have been inflicted on plaintiff by reason of a defective jackscrew furnished to him by defendant, evidence of the attending physician that plaintiff told him, upon his inquiry, that "he was raising the engine with a jackscrew, and he kicked it or wrung it out, he could not tell which, causing the engine to roll back and crush his arm," etc., is competent as a matter of right, and not excluded by Revisal, 1621, it having been admitted or clearly established by other testimony that plaintiff's arm had been crushed by the defendant's engine having fallen upon it.

CIVIL ACTION, tried before *Lyon, J.,* and a jury, at November Term, 1907, of the Superior Court of CRAVEN County.

There was evidence on the part of plaintiff tending to show that plaintiff, an employee of the defendant company, was engaged in moving a heavy engine of the defendant company from their mills to the cars, and, at the time of the injury, was raising the engine by means of a jackscrew, when the engine fell, catching plaintiff's arm between the engine and a

SMITH *v.* LUMBER CO.

brick wall near by and crushing same so that amputation was necessary; and that the injury was caused by reason of a defective jackscrew negligently furnished by defendant company.

The defendant claimed, and offered evidence tending to show, that there was no defect in the screw, and, further, that the injury was caused by fault of plaintiff in negligently kicking or jerking the screw from its proper placing. In support of defendant's position they introduced one Dr. Jones, who testified that he was called to attend plaintiff, and, before treating him, asked him how he had received the injury, and plaintiff replied that he was raising the engine with a jackscrew and he kicked it or wrung it out—he could not tell which—causing the engine to roll back and crush his arm, etc.

Plaintiff in apt time objected to this testimony, but it was admitted, the court stating that it was admitted, not as a matter of discretion, but as a matter of law, and plaintiff excepted. There was a verdict for defendant, and plaintiff appealed, assigning for error the ruling of his Honor in admitting the testimony of Dr. Jones.

*D. L. Ward* and *Simmons, Ward & Allen* for plaintiff.
*W. W. Clark* and *Moore & Dunn* for defendant.

HOKE, J., after stating the case: At common law, communications between patients and attending physicians were not regarded as privileged, and the matter has been very generally made the subject of statutory regulation. Our own statute, which substantially accords with the form more usually adopted in such legislation, provides as follows (Revisal, sec. 1621): "No person duly authorized to practice physic or surgery shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: *Provided,* that the presiding Judge of

a Superior Court may compel such disclosure if, in his opinion, the same is necessary to a proper administration of justice." It is the accepted construction of this statute that it extends, not only to information orally communicated by the patient, but to knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity, and which was necessary to enable him to prescribe. *Garlside v. Insurance Co.,* 76 Mo., 446; *Dilleber v. Insurance Co.,* 69 N. Y., 256. And it is further held, uniformly, so far as we have examined, that the privilege established is for the benefit of the patient alone, and that same may be insisted on or waived by him in his discretion, subject to the limitations provided by the statute itself:

"1. That the matter is placed entirely in the control of the presiding Judge, who may always direct an answer, when in his opinion same is necessary to a proper administration of justice.

"2. That the privilege only extends to information acquired while attending as physician in a professional capacity, and which information is necessary to enable him to prescribe for such patient as a physician." Wigmore, Vol. XIV, sec. 2286c.

In the present instance, the court having declined to exercise the discretion conferred by the statute, and having admitted the answer of the witness as a matter of right in defendant, the correctness of the ruling will depend upon the interpretation put upon the second limitation stated: "That the privilege only exists as to information which is necessary to enable the physician to prescribe for such patient as a physician." Many of the courts have been very liberal in construing this statute in favor of the protection afforded the patient, some of them going to the extent of holding that, whenever a question has been asked by an attending physician with a view of prescribing, the answer is privileged, however unimportant

or irrelevant such answer may prove to be, but we do not think that such a position can be sustained.

It must be remembered that the privilege did not exist at all at common law. It only arose by reason of the statute, and, this statute having provided as a condition that the communication, to come within its terms, shall be necessary to enable the physician to prescribe, we think this limitation must be given effect, and that it must rest in the legal discretion of the court to determine, from all the facts and attendant circumstances, including the answer itself, whether the information given was necessary for the purpose indicated. There are, no doubt, many occasions when an answer to the question usually asked by a physician, "How were you hurt?" could and should be regarded and held as necessary to intelligent treatment. And when this is true, both the substance of the answer and the incidental details would come within the protection provided by the law. But we do not think, by any fair or reasonable intendment, the statute could be construed as extending to the answer admitted in the present instance. There was no dispute between the parties that the plaintiff's arm had been crushed by reason of having been caught between the falling engine and the brick wall, and it could make no possible difference in the treatment whether this falling of the engine was occasioned by a defective jackscrew or by plaintiff's conduct in negligently kicking the screw out of place at an inopportune time.

We are of opinion that his Honor correctly ruled that defendant was entitled to have the answer of the witness admitted in evidence as a matter of right, and that his construction of the statute is in accord with the weight of authority. *Green v. Railway Co.,* 176 N. Y., 201; *People v. Cole,* 113 Mich., 83; *In re Will. Bruendl,* 102 Wis., 45; *Railway v. Murray,* 55 Kan., 336. The decision of the Indiana courts relied upon by plaintiff (*Pennsylvania Co. v. Marion,* 123

147—5

Ind., 415) is based on an interpretation of an Indiana statute (Revised Statutes Indiana, sec. 497) which is much broader in its terms and permits a different construction.

There is no error, and the judgment below is affirmed.

No Error.